***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Griffin, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Commission, and this is the Court of proper jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On the dates of injury, the parties were subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an employment relationship existed between the parties.
5. Defendant-Employer is self-insured.
6. With regard to the July 5, 2006, injury (I.C. No. 640319), plaintiff's average weekly wage is $471.59 (subject to wage verification). This yields a compensation rate of $314.41.
7. With regard to the October 27, 2008, injury (I.C. No. 193903), plaintiff's average weekly wage is $575.17 (subject to wage verification). This yields a compensation rate of $383.47.
8. Plaintiff's July 5, 2006, injuries (I.C. No. 640319) were accepted on a Form 60 dated July 26, 2006.
9. Plaintiff's October 27, 2008, injury (I.C. No. 193903) was accepted on a Form 60 dated November 21, 2008, which solely listed plaintiff's low back injury. Defendant denies that plaintiff injured her neck in connection with October 27, 2008 injury.
 ***********
The following were submitted to the Deputy Commissioner as:
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement *Page 3 
2. Stipulated Exhibit Number 2, Medical Records
3. Plaintiff's Exhibit Number 1, Correspondence dated February 10, 2009
4. Plaintiff's Exhibit Number 2, Correspondence dated May 14, 2009
5. Plaintiff's Exhibit Number 3, Correspondence dated April 23, 2009
 ***********
The following were received into evidence as:
 DEPOSITIONS
1. Oral deposition of John Kelly, M.D., taken on December 4, 2009 with Plaintiff's Exhibits numbered 1, 2 and 3 attached to the deposition transcript.
2. Oral deposition of George S.E. Aitken, M.D., taken on December 8, 2009 with Defendant's Exhibits numbered 1, 2 and 3 attached to the deposition transcript.
3. Oral deposition of Michael Goebel, M.D., taken on December 29, 2009 with Defendant's Exhibit Number 1 attached to the deposition transcript.
4. Oral deposition of Ellen Lawson, M.D., taken on December 29, 2009 with medical records attached to the deposition transcript.
 *********** ISSUES
1. Whether plaintiff's neck condition is a compensable component of her July 5, 2006 work-related injury?
2. Whether plaintiff's neck condition is a compensable component of her October 27, 2008 work-related injury?
3. Whether plaintiff is entitled to any further indemnity benefits as a result of either of her compensable work injuries? *Page 4 
4. Whether plaintiff is entitled to further medical indemnity benefits as a result of her compensable work injuries?
5. What sanctions and penalties should be assessed against defendant?
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 40 years old. Plaintiff began her employment with defendant-employer in 2000 as a transportation worker.
2. On July 5, 2006, plaintiff sustained a compensable injury by accident when she was hit by a dump truck while operating a paving machine. She sustained injuries to her left ribs, back, left arm and legs.
3. After the July 5, 2006 accident, plaintiff initially sought treatment at Memorial Mission Hospital. On July 12, 2006, plaintiff sought additional medical treatment with Urgent Care for complaints of pain and tenderness in her lower back. Plaintiff was released to return to work four hours per day with restrictions of no driving and limited bending. On July 22, 2006, plaintiff followed up with Urgent Care with complaints of pain in her upper, mid and lower back and her left thoracic ribcage. An orthopaedic evaluation was recommended, as well as a course of physical therapy.
4. On July 25, 2006, plaintiff reported pain in the cervical, thoracic and lumbar regions. In response to plaintiff's cervical pain complaints, the therapist worked on increasing her range of motion in the cervical region of her spine. *Page 5 
5. On August 30, 2006, plaintiff presented to Dr. Michael Goebel with complaints of lower back pain with some pain in the left leg. Dr. Goebel recommended an MRI scan for further evaluation and treatment. He provided work restrictions of no lifting more than 20 pounds.
6. On October 5, 2006, Dr. Goebel reviewed the findings on the MRI scan of the lumbar spine, which were normal for plaintiff's age. He recommended that plaintiff complete her physical therapy program and placed her at maximum medical improvement. Dr. Goebel assigned a 0% permanent partial impairment rating to the back and released plaintiff to return to full duty work with no restrictions.
7. On October 27, 2008, plaintiff sustained a second compensable injury by accident when she fell backwards from a fence and landed on her back while pulling brush at work. After completing her shift, she sought medical treatment at the Emergency Room of Mission Hospital. She reported "experiencing worsening back pain and some mild neck stiffness" later in the day of the accident. Defendant accepted plaintiff's claim as a low back injury.
8. On November 5, 2008, plaintiff presented to Sisters of Mercy Urgent Care with complaints of low back pain. She was prescribed pain and anti-inflammatory medications. On November 12, 2008, plaintiff returned to Sisters of Mercy Urgent Care with complaints of pain in her right hip radiating down her leg as well as her low back.
9. On November 18, 2008, plaintiff returned to Dr. Goebel with low back pain. Plaintiff reported that her symptoms increased "with sitting, standing or walking and improved with lying down as well as pain pills." Dr. Goebel recommended physical therapy and work restrictions of no lifting more than 15 pounds with occasional bending, stooping or twisting. *Page 6 
10. On December 7, 2008, plaintiff sought treatment at NextCare Urgent Care where she reported symptoms in the neck, shoulder and back. Her diagnosis was back pain. Plaintiff was instructed to seek treatment at the emergency room if her symptoms persisted or worsened. She was also advised to return to her orthopaedist.
11. On December 17, 2008, plaintiff returned to Dr. Goebel with continued complaints of pain down her legs, primarily on the left side. Dr. Goebel recommended repeating the MRI scan of the lumbar region. He continued plaintiff's work restrictions, which he advised were due to thoracic myofascial pain.
12. On December 30, 2008, Dr. Goebel compared the 2006 MRI scan to the 2008 MRI scan. He noted that there were no significant changes in the scans. He increased plaintiff's work restrictions to include lifting up to 20 pounds. He noted that plaintiff needed to work out her remaining symptoms with physical therapy. Dr. Goebel anticipated a full duty work release within four weeks.
13. Plaintiff continued to work within her restrictions, but had persistent low back pain radiating down her left leg and thoracic spine pain. On January 28, 2009, plaintiff reported that she was performing her light duty activities at work. She also reported that her back and hemorrhoids seem to "incapacitate her at times." Dr. Goebel anticipated releasing plaintiff at maximum medical improvement with a 0% permanent partial impairment rating to the back in the next four weeks. Additionally, he noted she would be capable of full duty work with no restrictions at that time.
14. In February 2009, plaintiff relocated from Asheville to Roxboro with her husband. Defendant-Employer was unable to transfer her employment to the Roxboro area, but *Page 7 
did leave plaintiff on the payroll, without pay, for an additional month in case she returned to Asheville.
15. On March 23, 2009, plaintiff presented to Dr. George Aitken of Duke Orthopaedics of Person County, who was authorized by defendant to provide treatment. Plaintiff reported back and neck pain with radiation into the extremities. A cervical x-ray revealed degenerative disc disease at C6-C7 with osteophyte formation. Dr. Aitken ordered an MRI scan of the cervical spine and EMG studies of the lower and upper extremities.
16. The EMG studies revealed that plaintiff had right carpal tunnel syndrome and some minor pathology in her left wrist, and tarsal tunnel syndrome on her left side. The cervical MRI scan revealed moderately advanced stenosis at the C6-C7 level, circumferential bulging disk, flattening of the cord and moderate left and mild right foraminal narrowing.
17. Plaintiff continued to treat with Dr. Aitken for her back and neck symptoms. Dr. Aitken prescribed a course of physical therapy for plaintiff's back and neck symptoms. On April 28, 2009, Dr. Aitken wrote plaintiff completely out of work. Defendant did not reinstate temporary total disability benefits upon receipt of Dr. Aitken's out of work note.
18. On June 5, 2009, plaintiff reported pain and weakness in her upper left leg. She indicated that she had not received a huge benefit from the prescribed medications. Dr. Aitken referred plaintiff to a pain clinic for further treatment of her chronic neck and back symptoms.
19. On October 7, 2009, Dr. Aitken completed a medical questionnaire in which he opined that, given adequate pain management, plaintiff was capable of performing sedentary/light duty work as of June 5, 2009. *Page 8 
20. In the summer of 2009, plaintiff moved back to Asheville. She sought re-employment with defendant-employer, but there was no work available within her work restrictions.
21. On August 18, 2009, plaintiff came under the care of Dr. John Kelly, who is board-certified in family medicine and certified in electrodiagnostics. Plaintiff reported low back and neck pain with muscle spasms, and left leg numbness and weakness. Based on his physical examination, Dr. Kelly scheduled plaintiff for a lumbar neural scan/fiber nerve conduction study.
22. Dr. Kelly opined that the findings from the neural scan were consistent with plaintiff's back injury on October 27, 2008. He stated that his evaluations and medical treatment were causally related to her low back injury on October 27, 2008. He further opined that plaintiff was medically disabled and was not capable of sustaining employment based on his experience as a medical examiner with the North Carolina Sate Disability Office, his physical examinations of plaintiff, and the results of the diagnostic studies.
23. On October 7, 2009, defendant directed plaintiff to return to Dr. Goebel. Plaintiff reported neck pain, and Dr. Goebel indicated that there was no relationship between her cervical symptoms and her work-related incident. Dr. Goebel prescribed work restrictions and physical therapy for "thoracic myofascial pain." He confirmed his 0% permanent partial impairment rating to the back and released plaintiff to full duty work with no restrictions.
24. On October 14, 2009, Dr. Kelly referred plaintiff to a pain specialist, Dr. Jerry Katula, based on the long history of her injury and her long-term pain levels.
25. On February 22, 2010, plaintiff underwent an independent medical examination with Dr. Margaret Burke of Carolina Spine Neurosurgery Center, who reviewed plaintiff's *Page 9 
medical history and records. Plaintiff reported pain in the neck, shoulders, hips, back and legs. She reported tightness and tenderness throughout the neck and tenderness over the lumbar spine and associated paraspinal muscles. Dr. Burke diagnosed a lumbar and cervical strain. Dr. Burke opined, "I agree that she has a myofascial pain syndrome, however, I do feel that she had a work related injury." Dr. Burke assigned plaintiff a 5% permanent partial disability rating. She further opined that plaintiff would benefit from a comprehensive conservative management program to include pain relieving therapy and concomitant work conditioning with a goal to return to substantial, gainful employment.
26. Based upon his examinations and the fact that plaintiff never mentioned any neck symptoms throughout his treatment of her from 2006 to 2008, Dr. Goebel opined that plaintiff's current neck condition is not causally related to her October 27, 2008 injury by accident. He further recommended against plaintiff's participation in a pain clinic due to his opinion that the pain clinic would not provide relief from her myofascial pain symptoms. Dr. Goebel recommended that plaintiff stop taking narcotics and return to work.
27. Dr. Aitken opined that plaintiff's neck condition, disability and need for chronic pain treatment was caused by the combination of her July 5, 2006 injury and the subsequent aggravation of her neck and back by her October 27, 2008 injury. Dr. Aitken disputed that the normal aging process would cause more significant pathology at one level. In his opinion, something caused the significant level of degeneration at the one level of plaintiff's cervical spine. Dr. Aitken stated he was not provided with information of any other possible mechanism of injury other than plaintiff's work-related incidents.
28. On October 7, 2009, Dr. Aitken responded to a written medical questionnaire stating that, with adequate pain management, plaintiff was capable of performing sedentary/light *Page 10 
duty work as of June 5, 2009. As of the date of the deposition, Dr. Aitken indicated that he needed to re-evaluate plaintiff to determine her current work restrictions and the continuing need for a pain management referral.
29. The Full Commission has reviewed and carefully weighed all of the evidence and the testimony, including that of Drs. Goebel and Aitken. The Full Commission assigns greater weight to the medical opinion of Dr. Aitken than that of Dr. Goebel on the issue of whether plaintiff's neck condition is causally related to her compensable fall on October 27, 2008.
30. Drs. Kelly and Burke have determined that plaintiff is unable to return to work without the assistance of a pain management clinic, and possibly a work conditioning program. Dr. Aitken released plaintiff to return to sedentary/light duty work on June 5, 2009, but at the time of his deposition, he stated that he needed to re-evaluate plaintiff to determine her current physical work restrictions. The Full Commission finds that plaintiff has been totally disabled from any employment since April 28, 2009 and continuing until the date of the hearing before the Full Commission.
31. This claim was not defended based on stubborn unfounded litigiousness. Thus, no sanctions against defendant are warranted.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On July 5, 2006 and October 27, 2008, plaintiff sustained compensable injuries by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). *Page 11 
As a result of her compensable injuries, plaintiff sustained injuries to her back, neck and thoracic spine.
2. An employee may meet his burden of proving disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). In this case, plaintiff has satisfied the first prong of Russell. She has presented competent, credible medical evidence that she is incapable of working in any employment as a result of her compensable injuries. As a result, plaintiff is entitled to receive temporary total disability benefits at the weekly compensation rate of $383.47 beginning April 28, 2009 and continuing until plaintiff returns to work or further order of the Commission.
3. As a result of her compensable injury, plaintiff is entitled to receive medical treatment that would effect a cure, give relief or lessen her period of disability, including treatment for the low back, neck and thoracic spine, subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-25.
4. This claim was not defended based on stubborn unfounded litigiousness. Thus, no sanctions against defendant are warranted. N.C. Gen. Stat. § 97-88.1.
 *********** *Page 12 
Based upon the foregoing Findings of Facts and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee approved herein, defendant shall pay plaintiff temporary total disability compensation at the weekly compensation rate of $383.47 beginning April 28, 2009 and continuing until plaintiff returns to work or further order of the Commission. All past due disability benefits to the date of this Award shall be paid in one lump sum. Future benefits shall be paid weekly.
2. Defendant shall pay the medical expenses incurred and/or to be incurred by plaintiff as a result of her compensable low back, neck and thoracic spine injuries when bills for the same have been submitted according to proper Industrial Commission procedure.
3. IT IS HEREBY ORDERED that counsel for the parties shall confer regarding the selection of a physician to reevaluate plaintiff's ability to return to work and her need for pain management.
4. A reasonable attorney's fee is awarded to plaintiff's counsel and shall be paid by defendant as follows: 25% of the accrued compensation due plaintiff shall be deducted from said compensation and shall be paid in one lump sum directly to plaintiff's counsel; thereafter, plaintiff's counsel shall be paid every fourth check due plaintiff.
5. Defendant shall bear the costs.
This the 20th day of February, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 13 
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ DANNY LEE McDONALD COMMISSIONER *Page 1